In the Matter of Thomas Howard BELL
and Margaret Louise Bell, Debtors.

GENERAL MOTORS ACCEPTANCE
CORPORATION, Plaintiff,

v.

Thomas Howard BELL and Margaret
Louise Bell, Defendants.

Bankruptcy No. 80–01510–B.
Adv. No. 80–1527–B.

United States Bankruptcy Court,
E. D. Michigan.

Jan. 26, 1981.

Stewart, O'Reilly, Cornell, Lascoe & Rancilio, P. C. by Richard G. Szymczak, Sterling Heights, Mich., for plaintiff.

Professional Legal Centers, P. C. by William M. Crawforth and Kurt A. O'Keefe, Detroit, Mich., for defendants.

### OPINION

GEORGE BRODY, Bankruptcy Judge.

This action raises the question of whether a secured creditor may require a debtor, who files a petition in bankruptcy, to turn over exempt personal property, unless the debtor redeems the property pursuant to section 722, or enters into an agreement providing for redemption pursuant to section 524(c).

Thomas Howard Bell and Margaret Louise Bell, husband and wife, filed a joint petition in bankruptcy on March 28, 1980. At the time of the filing of the petition, the debtors owned a 1978 Chevrolet Van automobile with a value of approximately $6,075.00, subject to a security interest held by General Motors Acceptance Corporation ("G.M.A.C."), to secure the payment of an outstanding debt of $5,095.36. The debtors claimed as exempt their equity in the automobile. The debtors were not in default in the payments due G.M.A.C. when they filed the petition in bankruptcy, and have continued to make the required contract payments. After the filing of the bankruptcy petition, G.M.A.C. filed a complaint to reclaim the automobile.

Initially, G.M.A.C. contends that since it bargained for the personal liability of the debtors, the discharge of that liability, by virtue of the filing of the petition in bankruptcy, permits it to terminate the contract and reclaim its collateral.

The Constitution of the United States grants to Congress the power to establish "uniform Laws on the subject of Bankruptcies . . .," (Art. 1, § 8, Cl. 4) and "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers. . . ." Art. 1, § 8, Cl. 18.

Pursuant to this grant, "Congress may discharge the debtor's personal obligations because, unlike States, it is not prohibited from impairing the obligations of contracts." *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935). See also *Continental Illinois National Bank and Trust Co. v. Chicago, Rock Island and Pacific Ry. Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902).

In addition, parties to a contract are chargeable with the knowledge that their contracts are not only subject to existing laws, but also to bankruptcy legislation which may thereafter be enacted.

"All parties to a contract are, of necessity, aware of the existence of, and subject to, the power of Congress to legislate on the subject of bankruptcies. They were and are chargeable with knowledge that their rights and remedies, in case the debtor becomes insolvent and is adjudicated a bankrupt, are affected by existing bankruptcy laws and all future lawful bankruptcy legislation which might be enacted. . . ." *In re Prima Co.*, 88 F.2d 785, 788 (C.A.1937).

G.M.A.C., therefore, was aware, or should have been aware, that if the debtors filed a petition in bankruptcy, their personal liability on the contract would be extinguished. The discharge in bankruptcy did not affect the creditor's security interest in the collateral. A valid security interest in property, whether exempt or nonexempt, survived the filing of a petition under the Bankruptcy Act. *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). It continues to do so under the Bankruptcy Code. The Code specifically provides that a secured creditor retains his secured claim "to the extent of the value of such secured creditor's interest . . . in such property." § 506(a). If the debtor ultimately pays to the creditor the lesser of the amount owing or the fair market value of the property, the creditor has no cause to complain. "There is no constitutional claim of the creditor to more than that." *Wright v. Union Central Life Insurance Co.*, 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1940).

■ Thus, the fact that the debtors filed a petition in bankruptcy and, pursuant to that petition, their unsecured debts were discharged, does not confer upon G.M.A.C. the right to repossess the motor vehicle.

Additionally, G.M.A.C. contends that it may reclaim the automobile, since the contract entered into with the debtors gave G.M.A.C. the option to terminate if the debtors instituted a bankruptcy proceeding.

■ The Code invalidates such so-called bankruptcy clauses. § 365(e) and § 541(c)(1). Section 365(e) invalidates such clauses as they relate to executory contracts and unexpired leases. This section is not applicable here. Clearly, this action does not involve an unexpired lease. And the contract is not executory, since G.M.A.C. has completely performed its part of the bargain. *Inter Continental Promotions, Inc. v. MacDonald*, 367 F.2d 293, 303 (5th Cir. 1966). See also Countryman, "Executory Contracts in Bankruptcy," Part I, 57 Minn.L.Rev. 439 (1973), and Part II, 58 Minn.L.Rev. 479 (1974). Section 541(c)(1), however, is applicable. Section 541(c)(1) provides that an interest of the debtor in property becomes property of the estate, notwithstanding any provision in the contract between the debtor and the other contracting party, which gives that party an option to terminate the debtor's interest in such property upon the filing of a bankruptcy petition. The motor vehicle became property of the estate upon the filing of the debtors' petition. § 541(a). It became property of the estate, free of G.M.A.C.'s right to terminate the contract. The bankruptcy clause was not reinstated by the fact that the property was removed from the estate by virtue of the debtors' claim of exemption. "The date of bankruptcy is the date of cleavage and the rights of creditors thereafter are governed by the Bankruptcy [Code]." *In re Wiltse Brothers Corporation*, 361 F.2d 295, 299 (6th Cir. 1966).

G.M.A.C., therefore, may not rely upon the bankruptcy clause as a basis for reclamation.

Finally, G.M.A.C. argues that a debtor may retain collateral subject to a valid security interest only if he redeems the collateral, pursuant to section 722, or if he enters into an agreement to repay the debt under section 524(c)(4). The remedies available to the debtors by virtue of sections 722 and 524(c) are not exclusive. Moreover, these remedies, as a practical matter, are of doubtful value to a debtor.

Section 722 of the Code permits an individual to redeem certain specified property subject to a security interest if the debtor claims the property as exempt or if it is abandoned by the trustee, by paying the secured creditor the value of the collateral.[1] Section 722 requires a cash payment. *In the Matter of Raymond Robert Miller*, 4 B.R. 305, 6 B.C.D. 436 (Bkrtcy., E.D.Mich. 1980). It is fairly obvious that if the value of the property is significant, the debtor will be unable to take advantage of this remedy.

■ Section 524(c)(4) permits a debtor and a secured creditor to enter into an agreement "providing for redemption under section 722," subject to compliance with certain conditions and subject to court approval. Pursuant to this provision a debtor, if the creditor agrees, may redeem the property other than by a cash payment. However, a debtor cannot compel a creditor to enter into such an agreement. If a debtor, not in default, were compelled to surrender collateral—unless the creditor agreed to enter into a repayment agreement—the creditor, despite the statutory safeguards, would be able to dictate the terms of the agreement in contravention of the policy of the Code.

---

1. Section 722 in its entirety reads as follows:
   722. *Redemption*
   An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dis-

chargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed claim of such holder that is secured by such lien."

■ In its memorandum, G.M.A.C. has also presented arguments as to why the automatic stay imposed by section 362 should be vacated. However, whether or not the automatic stay should or should not be vacated, does not address the issue before the court. A determination that the stay should be vacated, merely permits a creditor to proceed with a pending or contemplated action. The vacation of a stay may, but does not necessarily, determine the ultimate merits of the question involved in the stayed litigation.

■ Since the creditor may not rely upon the breach of the bankruptcy clause of the contract, or the fact that the underlying unsecured debt of the debtor is discharged, as a basis for reclamation, and since the debtor was current in his payments and not in default of any other provisions of the contract, the complaint to reclaim the 1978 Chevrolet Van automobile is dismissed.

An appropriate order to be submitted.