729 F.2d 982
 10 Collier Bankr.Cas.2d 701, 11 Bankr.Ct.Dec. 961,
Bankr. L. Rep. P 69,769
 RIGGS NATIONAL BANK OF WASHINGTON, D.C., Appellant,
v.
John Gillis PERRY, Jr., Appellee.
In re John Gillis PERRY, Jr., Debtor.
 No. 83-1442.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1983.
Decided March 16, 1984.
 
 Graham C. Huston, Washington, D.C. (Roderick H. Angus, Washington, D.C., on brief), for appellant.
 James M. Greenan, Landover, Md. (Greenan, Walker, Stewart & Meng, Landover, Md., on brief), for appellee.
 Before WIDENER and ERVIN, Circuit Judges, and BRYAN, Senior Circuit Judge.
 ALBERT V. BRYAN, Senior Circuit Judge:
 
 
 1
 The Riggs National Bank of Washington, D.C., a secured creditor, petitions this Court for further security for its loan to John Gillis Perry, Jr. Specifically, Riggs asks us to protect it from an automatic stay which allows debtors to attempt repayment, reorganization or relief through the provisions of the Bankruptcy Code without any collection efforts, foreclosure or harassment by their creditors. See 11 U.S.C. Sec. 362(a). Because Perry continues to make timely payments, we do not see Riggs as being in a position any more precarious than the customary installment creditor. In this conclusion we are in complete accord with the District Judge's thorough analysis and, with him, decline to disturb the stay imposed by Chapter 7 of the Code before discharge is either granted or denied.
 
 
 2
 * Riggs is the holder of a secured interest in Perry's 1980 Audi 5000 sedan automobile by virtue of the terms of the instrument evidencing his purchase, wherein Perry agreed to pay the sale price on an installment basis. He thereafter filed a petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. Secs. 701-66 triggering the automatic stay provided in section 362(a); that stay normally remains in effect from the time a petitioner files under Chapter 7 until a Bankruptcy Court rules on a discharge request. See 11 U.S.C. Sec. 362(c)(2)(C). However, Riggs then filed a complaint seeking to modify the stay in the Federal Bankruptcy Court for the District of Maryland pursuant to 11 U.S.C. Sec. 362(d).[1] That section allows relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." The bank, pleading that Perry was in arrears in his payment obligations, sought to begin default proceedings to compel him to surrender the automobile, contending that the value of the security would otherwise shrink because of its depreciable nature.
 
 
 3
 Although Perry had been tardy in over half of his payments as of the hearing date, the Bankruptcy Court observed that he was then current and denied the relief prayed. This decision was upheld by an en banc panel of the Bankruptcy Court, as well as by the District Court, which ruled "that no cause [had] been shown to justify modification of the stay and that any decision regarding [Riggs's] ultimate rights with respect to the automobile must be postponed until there is a disposition of Perry's Chapter 7 petition." 29 B.R. 787, 795 (D.C.D.Md.1983).
 
 II
 
 4
 Before us, on appeal, Riggs maintains that Perry breached the sales agreement's "default-upon-filing" clause, which stipulates that the purchaser shall be deemed in default of the agreement upon the commencement of any bankruptcy proceeding by or against the purchaser. This default, the bank insists, qualifies as "cause" within the meaning of 11 U.S.C. Sec. 362(d)(1) to modify the stay.
 
 
 5
 The enactment of the Bankruptcy Code, and in particular the stay provision, evinced a clear Congressional purpose to create a way by which debtors may obtain a fresh start towards reorganization of their financial obligations.[2] This Court's enforcement of a default-upon-filing clause would clearly intrude upon that policy since any such default would deprive the debtor of the advantages of the Code's liquidation procedures; this result follows from the working of section 362(d)(1). Thus, a debtor could not file under Chapter 7 to invoke the automatic stay without assuring its demise due to his default under the contract. Accordingly, we align ourselves with the District Court and other Federal courts that have held default-upon-filing clauses unenforceable as a matter of law. See, e.g., Matter of Rose, 21 B.R. 272, 276-77 (Bkrtcy.D.N.J.1982); In re Horton, 15 B.R. 403, 405 (Bkrtcy.E.D.Va.1981).
 
 III
 
 6
 Regardless of the vitality of the default-upon-filing clause, Riggs gives other reasons in support of its contention that they are inadequately protected, and that we should modify the stay. First, it asserts that the Chapter 7 filing itself constitutes a constructive default, since a Bankruptcy Court may thereafter absolve Perry of any personal liability under the installment sales agreement. If Perry's obligation is discharged, however, the bank retains a lien against the automobile to the extent of its value. See In re Rosenow, 22 B.R. 99, 100 (Bkrtcy.W.D.Wash.1982); Matter of Sawyer, 18 B.R. 661, 662 (Bkrtcy.D.Idaho 1982); In re Weathers, 15 B.R. 945, 951-52 (Bkrtcy.D.Kan.1981). The bank's sole legitimate concern, therefore, is that its lien exceeds the present value of the collateral. Allegedly, it is placed at even greater risk because of the highly depreciable character of its security. Nevertheless, appellant's position is no more fragile, due to the Chapter 7 filing alone, than that of any lender under an installment sales contract. We can muster even less sympathy for institutional lenders; they are fully cognizant of the risks inherent in the making of loans, default among them, and receive substantial interest payments to help offset those risks. This Court declines to exact additional obligations from debtors who merely file under Chapter 7 while they maintain their fiscal responsibilities.
 
 
 7
 Appellant Riggs further suggests that we are required to grant it relief from the stay due to the exception found in section 362(d)(2). That provision states that modification of a stay of an act against property is appropriate "if the debtor does not have an equity in such property; and ... such property is not necessary to an effective reorganization." While this clearly applies to real property mortgage foreclosures, we cannot believe the Congress intended that we modify a section 362(a) stay every time the value of a debtor's personal property drops below the balance due on the outstanding loan. But see In re Stewart, 3 B.R. 24 (Bkrtcy.N.D.Ohio 1980). The Senate Judiciary Committee's comments on this provision of the Code support our interpretation: "In cases where the single asset of the debtor is real property, the court shall grant relief from the stay if the debtor has no equity in the collateral, thereby allowing the creditor to proceed with his foreclosure." (Emphasis added). S.Rep. No. 989, 95th Cong., 1st Sess. 5, reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 5791.
 
 
 8
 Riggs also directs our attention to the sales agreement's proviso that allows the bank to declare the entire outstanding balance at once due and payable upon the buyer's default. While Perry admittedly fell behind in his monthly payments prior to his Chapter 7 institution, the bank's asserted right to accelerate all remaining payments conflicts with the debtor's right to the section 362(a) stay. Maintenance of that stay until the discharge issue has been settled will not result in undue hardship for Riggs as long as Perry pays the monthly installments.
 
 IV
 
 9
 An alternative theory of Riggs postulates that to maintain possession of the collateral, a Chapter 7 petitioner must either reaffirm the loan agreement pursuant to 11 U.S.C. Sec. 524(c)[3] or redeem the collateral in accordance with 11 U.S.C. Sec. 722.[4] Although another Federal Circuit Court has concluded that a debtor may not retain possession of collateral after filing under Chapter 7 absent reaffirmation or lump-sum redemption, see In re Bell, 8 B.R. 549 (Bkrtcy.E.D.Mich.), rev'd, 15 B.R. 859 (D.C.E.D.Mich.1981), aff'd, 700 F.2d 1053 (6th Cir.1983),[5] we do not reach the issue of whether these provisions are mandatory or elective. Rather, we only observe that the section 362(a) stay continues to run until discharge is granted or denied, see 11 U.S.C. Sec. 362(c)(2)(C), and that Perry has the option of exercising his right to reaffirm or redeem until the expiration of that stay. See In re Cruseturner, 8 B.R. 581, 592 (Bkrtcy.D.Utah 1981) (reaffirmation and redemption rights run concurrently with the stay). For this reason, we must reject Riggs's argument.
 
 V
 
 10
 In sum, it is imperative that Perry, so long as his discharge petition is under consideration, not be denied the rights and privileges accorded him by the Bankruptcy Code.
 
 The judgment will be
 
 11
 AFFIRMED.
 
 
 12
 WIDENER, Circuit Judge, concurring and dissenting:
 
 
 13
 I concur in not dissolving the stay although for somewhat different reasons than those expressed in the majority opinion, which I set forth below. I do not agree, however, that adequate protection is not required for such a lien on personal property, and, as to that much of the opinion, I respectfully dissent.
 
 
 14
 Under 11 U.S.C. Sec. 541 (all references to code sections are to Title 11, U.S.C.), the automobile became the property of the bankrupt estate when Perry filed his petition in bankruptcy. At that time, Sec. 362(a)(4) automatically stayed "any act to create, perfect, or enforce any lien against property of the estate." This, of course, included the automobile in question. Perry having claimed the automobile as exempt property under Sec. 522(b)(1), parties in interest had to object or else the property claimed as exempt was to be so considered under Sec. 522(1). No objections having been filed, the property claimed as exempt then passed from the estate into the hands of the debtor. Leg.Hist. p. 5868, 6324.[1] The protection of the stay under Sec. 362(a)(4) terminated at that time in accordance with Sec. 362(c)(1). At that same time, however, Sec. 362(a)(5) separately stayed any act against the property of the debtor, including the automobile, and this is the stay now in effect. 2 Collier on Bankruptcy p 362.06 (15th ed. 1983).
 
 
 15
 Any relief from this stay would have to have been provided under Sec. 362(d), which must be either for cause under subsection (1), including the lack of adequate protection of the interest in the property, or if the debtor does not have an equity in the property under subsection (2)(A).
 
 
 16
 I agree with the majority opinion that the due on bankruptcy clause in the security agreement should not of itself be cause to terminate the stay, and would not enforce it, at least in this case, because it would be the equivalent of a forfeiture. Surely Congress recognized that most bankrupts have debts overdue, and if a past due debt were cause of itself for relief from a stay preventing a proceeding against the property of a bankrupt, there would be little left to the stay provisions of the Reform Act. I believe, however, the due on bankruptcy clause is one factor that should be considered in ascertaining whether or not to grant relief from a stay such as the one in effect here.
 
 
 17
 I do not agree with the majority opinion, however, as it implies that relief is not required by Sec. 362(d)(2) to personal property when the debtor loses his equity in the secured property. The statute is explicit on the point:
 
 
 18
 "... the court shall grant relief from the stay ... such as by terminating, annulling, modifying or conditioning such stay ... with respect to an act against property ... if the debtor does not have an equity in such property." Sec. 362(d)(2)(A). (emphasis added)
 
 
 19
 The Legislative History on page 5790 is just as certain:
 
 
 20
 "The automatic stay by its nature seriously affects the rights of all the debtor's creditors. As a result, certain limitations are placed upon the continuance of the stay. Adequate protection in the form of either cash payments or a replacement lien must be provided the creditor whose collateral is decreasing in value or is being consumed during the stay."
 
 
 21
 There is no doubt that the debtor has "no equity in such property" and none that the automobile in question is decreasing in value. There is also no doubt that the single bankruptcy judge who first heard this case provided additional protection (which he deemed adequate) by order. In connection with his refusal to terminate the stay, he ordered that payments be brought and kept up to date, that prepaid insurance for six months in advance be kept in force, and that, should the debtor fail to comply, upon five days written notice and presentation of an affidavit the stay would be lifted without further notice, a considerable improvement on the absence of any condition with respect to the stay which presently exists. I think this action initially taken by the individual bankruptcy judge was a sufficient compliance with the adequate protection required by Sec. 362(d).[2] Inexplicably, however, the en banc bankruptcy court vacated this order and did not renew it; neither did the district court renew it. Only because the debtor has nevertheless kept the conditions of the order do I think the stay should not be now lifted. I am of opinion, however, that, as a condition of continuing the stay, the district court should be required to reinstate the order of the individual bankruptcy judge, conditioning a continuance of the stay on the same conditions there ordered. Anything less, I think, is contrary to the explicit direction of the statute and the Legislative History I have referred to above.
 
 
 22
 One further thing needs mentioning. Our holding that the due on bankruptcy clause in the security agreement is not enforceable extends, of course, only to enforcement proceedings in bankruptcy and not as to its ultimate validity which will have to be determined under state law. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The stay presently in force under Sec. 362(a)(5) remains in force only "until the earliest of--(A) the time the case is closed; (B) the time the case is dismissed; and [obviously meaning or] (C) the time a discharge is granted or denied." At such time, then, the existing stay will terminate and the bank will be left free to foreclose its lien. At that time, the Legislative History, pages 5862 and 6317, is explicit that the rule of Long v. Bullard, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is retained. Long specifically approved the foreclosure of a lien of a mortgage on exempt property although the underlying debt had been extinguished in bankruptcy. Neither of the parties has argued Long to us nor have they argued the Legislative History explicitly adopting it, although I suggest both that case and the Legislative History with respect to it are of particular application here. In any proceedings which may result under Maryland law to foreclose the lien of the security instrument at issue in this case, the parties will be able to have determined the validity of the due on bankruptcy clause. While I do not find it necessary to express an opinion on that matter, I note that the Bell case acknowledges the validity of such clauses even in bankruptcy, to some extent at least, for the reason that the creditor's financial position on the loan has been diminished by the discharge of the personal liability of the debtor for the underlying debt in the bankruptcy action. The trustee in the case at hand has long ago reported that there were no assets to administer in this bankrupt estate. We are told of no exception to that report. Thus, no reason exists why the bankruptcy court should not act immediately to either grant or deny the discharge of Perry. Certainly the bankruptcy laws do not contemplate prolonged proceedings in no asset cases.
 
 
 
 [1]
 Section 362(d) provides in full:
 (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 (2) with respect to a stay of an act against property, if--
 (A) the debtor does not have an equity in such property; and
 (B) such property is not necessary to an effective reorganization.
 
 
 [2]
 The House Report on the Bankruptcy Reform Act of 1978 stated:
 The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6296-97.
 
 
 [3]
 Sec. 524(c) allows the debtor and creditor to enter into a "reaffirmation" agreement prior to discharge of the debt if the court approves
 
 
 [4]
 Sec. 722 provides:
 An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.
 
 
 [5]
 That case, however, is distinguishable from the one at bar in that the bankruptcy trustee in In Re Bell sought to abandon the automobile
 
 
 [1]
 Legislative History references are to the same volumes of U.S.Code Congr. and Admin.News referred to in the majority opinion
 
 
 [2]
 It has not been argued that the bank requests more protection, only that it be allowed to foreclose at once. In that context, I am not prepared to say that the conditions attached to the order of the individual bankruptcy judge were so inadequate as to constitute reversible error