In re Joseph Allen SCHMIDT and Deborah Diane Schmidt, Debtors.

Joseph Allen SCHMIDT and Deborah Diane Schmidt, Plaintiffs,

v.

OLD KENT BANK AND TRUST COMPANY, Defendant.

Bankruptcy No. NG 91–86617.
Adv. No. 92–8132.

United States Bankruptcy Court, W.D. Michigan.

Sept. 29, 1992.

Legal Aid of Western Michigan, William J. Weir III, Grand Rapids, Mich., for plaintiffs.

Warner, Norcross & Judd, Scott H. Hogan, Grand Rapids, Mich., for defendant.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

The issue in this case is whether a chapter 7 debtor can continue postpetition to perform under the terms of a security agreement which is not in default other than for the filing of the bankruptcy [1], even though the seller/secured party objects based on the debtor's refusal to sign a reaffirmation agreement. This matter has been submitted to the court on cross motions for summary judgment; the Plaintiffs requesting the court to hold that they are not in default on the contract and to enjoin the Defendant from repossessing or accelerating the indebtedness as long as the Debtors are not in default; and the Defendant requesting the court to hold that the Debtors are limited to redemption, reaffirmation or surrender, that the Debtors have defaulted under the purchase agreement causing the full amount to be due and payable which upon the discharge of the Debtors permits repossession and foreclosure of the van, and that the Bank is entitled to attorney fees and costs.

## FACTS

The Debtors entered into a purchase agreement with the Defendant for a 1990 Plymouth Voyager Van in July, 1990, financing $16,787.27 over sixty months. On December 13, 1991 the Debtors filed their chapter 7 bankruptcy. Originally, according to the statement of intention, the Debtors intended to reaffirm. However, after the Bank forwarded a reaffirmation agreement to Debtors' counsel, the Bank was notified of the Debtors' decision not to reaffirm, but rather to continue payments under the purchase agreement under which payments were current. The Bank threat-

---

1. In its brief, the Defendant indicates that the Plaintiffs have defaulted on their payments since the filing of this adversary proceeding. Whether or not the Plaintiffs are presently in default on their payments will not affect the opinion of the court.

ened to repossess the van, pointing to the paragraph of the purchase agreement where is states, "If a petition for relief is filed by or against you or any guarantor under any chapter of the federal Bankruptcy Code, the entire unpaid balance of what you owe us under this agreement will automatically become due and payable immediately without any further act or notice." The Debtors were directed to either reaffirm, redeem or surrender the collateral, and in response on March 12, 1992 they filed this adversary proceeding. The trustee's Notice of Intent to Abandon All Property of the Estate had been entered on February 5, 1992. On April 2, 1992 the Debtors' Order of Discharge was entered and on April 14, 1992 the case was closed.

### LAW

The sixth circuit decided in *General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053 (6th Cir.1983) that the Bells could not redeem collateral through installment payments. They had not defaulted on any of their monthly installments and were seeking authorization from the bankruptcy court to retain possession of their vehicle by continuing to pay those monthly installments without making any postpetition agreements with G.M.A.C. That court, concluding "that redemption and reaffirmation constituted the exclusive methods pursuant to which the Bells could retain possession of the secured collateral," *Id.* at 1058, described reaffirmation and redemption as "equitable complements."

Simply, a debtor incapable or unwilling to tender a lump-sum redemption and redeem the secured collateral for its fair market value may reaffirm with the creditor; contrawise, a debtor confronted with a creditor unwilling to execute a renegotiation may retain the secured collateral by redeeming it for its fair mar-

ket value, which value may be substantially less than the contractual indebtedness. However, § 524(c) facially contemplates that the creditor, for whatever reason, may reject any and all tendered reaffirmation offers; § 524(c) envisions execution of an "agreement" which, by definition, is a voluntary undertaking. *See*: *In re Whatley, supra*, 16 B.R. [394] at 396 [ (Bkrtcy.N.D. Ohio 1982) ]. Accordingly, if a debtor is authorized by the bankruptcy court to redeem by installments over the objection of the creditor, such practice would render the voluntary framework of § 524(c) an exercise in legislative futility.

*Id.* at 1056. Various circuits have recently looked at *Bell* and at whether redemption or reaffirmation are the exclusive options of a debtor who desires to retain secured collateral. *Home Owners Funding Corporation of America v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992), (cites to *Bell* as being in conflict with the precedent it followed in the fourth circuit); *In re Edwards*, 901 F.2d 1383 (7th Cir.1990), (follows the conclusions of *Bell*); *Lowry Federal Credit Union v. West (In re West)*, 882 F.2d 1543 (10th Cir.1989), (differentiates *Bell* as having considered only whether a debtor could redeem by installment payments and holds the reaffirmation agreement need not be signed). This court finds that the holding of *Bell* is applicable to this case, and therefore binding.

The Schmidts distinguish *Bell* on the basis that *Bell* discusses "redemption through installment payments." Yet, what the Bells wanted to do is exactly what the Debtors are asking this court to permit. The Debtors want to continue under the prepetition purchase agreement without reaffirming so that they can keep the collateral and at the same time, discharge their personal liability in their chapter 7.[2]

---

**2.** The Defendant has aptly described the problems of allowing a debtor to keep collateral while discharging his personal liability.

Prior to bankruptcy, Debtors were personally liable for the debt, which was also secured by the vehicle. The Debtors' personal liability for the debt and their possession of the collateral provide both the opportunity and incen-

tive to maintain the vehicle—the secured creditor's collateral—and keep it insured. If Debtors are permitted to avoid personal liability for their debt by redeeming by installments, they will have no stake in the value of the collateral and no reason to maintain or insure it. If the vehicle is wrecked, Old Kent will

The reason that the same issue is labeled by the sixth circuit in 1983 as "redemption through installment payments" and by this court today as "continued installment payments without reaffirmation" is revealed by an examination of the language of the pertinent Code sections as existing then and now.

Initially, it must be noted that § 524(c) has never utilized the term "reaffirmation agreement" but rather just "agreement." Bankruptcy Rule 4008 does use the words "reaffirmation agreement" in reference to the type of agreement found in § 524(c), and this terminology, commonly employed by bankruptcy practitioners today, is used herein.

Until the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the reaffirmation provisions of 11 U.S.C. § 524(c) delineated as one of the reasons for permitting such an agreement as "providing for redemption under section 722 of this title." 11 U.S.C. § 524(c)(4)(B)(ii). Therefore, references made after the adoption of the Bankruptcy Code in 1978 until the enactment of the 1984 Amendments to "redemption under § 524(c)" were references to reaffirmation agreements. While the 1984 Amendments changed the language of § 524, it appears that the only intent was to avoid court hearings on the reaffirmation agreements in many circumstances. The sixth circuit was dealing with the same issue as the one before me in its *Bell* opinion. *See In re Bell*, 8 B.R. 549 (Bkrtcy.E.D.Mich.1981) and *In re Bell*, 15 B.R. 859 (E.D.Mich. 1981).

I find that the Debtors were required to either enter into a reaffirmation agreement or redeem in order to retain the property. The Debtors are subject to the provisions of the purchase agreement which states that the Debtors are in default if they file bankruptcy. *Bell* states, "[T]he § 541(c) prohibition against such a bankruptcy clause has been held inoperable once the asset has been abandoned from the estate." *Bell*, 700 F.2d at 1058. Since the notice of abandonment has long since gone out, and the case is even closed, the Debtors are in default.

Therefore, I follow *Bell* and hold that a debtor in a chapter 7 case can retain secured collateral by either redemption or reaffirmation.[3]

### ORDER

This court, having received the complaint of the Debtors, having conducted a pretrial at which the parties agreed there are no issues of fact, having received cross motions for summary judgment and briefs in support thereof, and having entered its opinion this date which is hereby incorporated in and made a part hereof by reference thereto;

NOW, THEREFORE, ORDERS AS FOLLOWS:

1. Plaintiffs' complaint is dismissed with prejudice.

2. This being an equitable proceeding, no costs are allowed to either party.

---

have lost its claim to recover a deficiency *and* its collateral.

Moreover, what debtor would ever want to reaffirm personal liability when he or she could simply retain the vehicle and continue making monthly payments? What purpose would reaffirmation serve? Debtors ask for more than just a fresh start here; they want a free ride at the expense of Old Kent.

Brief in Support of Old Kent Bank and Trust Company's Motion for Summary Judgment and in Opposition to Debtors' Motion for Summary Judgment, pp. 6–7.

**3.** In hearings on reaffirmations I have found that many creditors (not Old Kent Bank) have adopted a policy of reaffirming only if the entire debt is reaffirmed regardless of the circumstances. Perhaps Congress, when next amending the Bankruptcy Code, will consider an involuntary reaffirmation where a debtor who has a small arrearage can reaffirm the debt up to the value of the collateral, protect the creditor by requiring proof of adequate insurance with loss payable clause to creditor and allow the court to set a reasonable amortization schedule.