In re Dianna D. KNIGHT.

Bankruptcy No. 397–33409psh7.

United States Bankruptcy Court,
D. Oregon.

Aug. 1, 1997.

Ilene D. Dell'Acqua, Portland, OR, for Debtor.

Thomas K. Hooper, Hooper, Englund & Weil, L.L.P., Portland, OR, for GMAC.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

On May 24, 1996, the debtor and her non-debtor spouse signed a contract denominated "GMAC Lease Agreement" and leased a 1996 Oldsmobile Bravada. This contract obliged them to pay $385.95 each month for three years to the lessor's assignee, Central Originating Leasing Trust. The contract designated GMAC as the servicing agent for the Agreement. This Chapter 7 case was filed on April 28, 1997; an order of relief was entered on that date and a trustee appointed. At the time of the bankruptcy filing, the debtor and her nondebtor spouse had possession of the vehicle, were current on their lease payments, and wished to keep the Bravada. GMAC has filed a motion to compel the trustee to assume or reject the vehicle lease under 11 U.S.C. § 365(a)[1]. The trust-

1. All section references are to Title 11 of the   United States Code unless otherwise specifically

ee filed an objection in which the U.S. Trustee has joined.

When a bankruptcy petition is filed under Chapter 7 the trustee appointed to administer the estate which is created takes custody and control of all estate assets, including the debtor's rights under any lease. Section 365(a) directs that the trustee may either assume or reject a debtor's interest in such lease. In Chapter 7 the debtor has no authority to exercise the option of assuming or rejecting leases.

GMAC argued that pursuant to § 365(d)(1), if the trustee neither assumes or rejects the lease it is deemed rejected. Under § 365(g) the rejection of a vehicle lease constitutes a breach of such lease. Due to the breach, it could be argued that the statute also effects a termination of the lease. Further, paragraph 25 of the subject lease itself gives GMAC the option, upon the debtor's default, to terminate the lease. This is because paragraph 24 defines a default by the debtor, in part, as doing "any other act that is a default under a Lease contract under applicable law." Despite the fact that the debtor might want to keep the vehicle and is current on her payments, upon receiving relief from the automatic stay, pursuant to the lease terms GMAC could declare the lease terminated and take steps to recover the vehicle. On the other hand, if the trustee assumed the lease, he could then assign his interest in the lease back to the debtor pursuant to § 365(f)(2). Upon such assumption and assignment GMAC would agree not to raise any issues of adequate assurance of future performance, under either § 365(b)(1)(C) as to the trustee or under § 365(f)(2)(B) against the debtor/assignee. Both the debtor and GMAC then would have the right to enforce the lease pursuant to its original terms.

GMAC further informed me that nationwide more and more debtors are filing bankruptcy having outstanding vehicle leases. In Oregon it is filing motions to compel in all Chapter 7 cases, whether or not the debtors are current in their lease payments upon filing and whether or not they want to keep indicated.

the vehicle. It is opposed to the trustee's filing a notice of abandonment of the estate's interest in the lease, as such a procedure would not result in an assumption of the lease. It takes the position that under circumstances where a leased vehicle has been surrendered postpetition it must wait for 60 days from the order of relief for the trustee to act under § 365 before taking any steps to process the vehicle. I am told that in other districts where it has filed these motions the trustees have agreed to assume such leases "without recourse" and then assign the estate's interest to the debtors.

The trustee objected to the motion on several bases. He pointed out that the language of § 365(a) is not mandatory. It allows him to choose whether to assume or reject a lease based on what is in the best interest of the estate. Under these facts he believes that it is unfair to the debtors for him to make a decision to either assume or reject a lease which will directly impact only the debtor. If the trustee were to reject the lease, GMAC would have the option as to whether it wanted to do business with the debtor. The debtor would have no option. Further, the trustee will often not know that there is an outstanding lease until the § 341 hearing. If this is true, he may not have time, within the 60 day deadline imposed by § 365(d)(1), to file a motion to assume or reject. Additionally, if the court were to require the trustee to file motions under § 365 on all outstanding vehicle leases, it could be setting a precedent which would obligate the trustee to thoroughly review all the debtor's ongoing contract payments and file § 365 motions to assume or reject on every one, including, but not limited to, utility services, furniture and appliance leases and medical equipment leases. GMAC's proposed process would place a significant burden on the trustee and on the court. In asset cases, the cost of filing such pleadings may be at the expense of the estate's creditors.

## ANALYSIS

When a vehicle lessee files a Chapter 7 bankruptcy petition, in the normal course the lessee/debtor shortly thereafter will obtain a

personal discharge from her lease payment obligation. Section 524(a) then enjoins the lessor from any act to collect the lease payments from the debtor. If the debtor does not wish to keep the vehicle, she may surrender it to the lessor. If, at the time of bankruptcy filing, the debtor is not current on her lease payments, the lessor may file a motion for relief from stay and probably will obtain relief to exercise its right under the contract to repossess the vehicle. However, if, at the time of filing, the debtor is current on her lease payments and decides to continue the payments and drive the vehicle the lessor has fewer options.[2] It may be unsuccessful with any motion for relief from stay for the purpose of taking possession of the vehicle because the debtor is not in default under the terms of the lease.[3] If at any time in the future during the lease term the debtor decided to stop making the lease payments the lessor would be prohibited from collecting the balance of the lease payments from the debtor. Meanwhile, the debtor has had the use of a depreciating vehicle. If, postbankruptcy, the debtor missed a lease payment but wished to cure the default and continue the lease payments, because of the discharge of her personal liability for the payments, the lessor cannot tell the debtor that if she wants to cure the default and keep the vehicle she has an obligation to make timely future payments. If the trustee were to assume the vehicle lease and assign it to a debtor who was current on her lease payments and wished to keep the vehicle, GMAC's dilemma would be solved. It could enforce all its rights under the terms of the original lease, including its right to recover the balance of the lease payments from the debtor.

GMAC's motion is misnomered. GMAC is actually asking this court to compel the trustee to assume its lease and assign it to the debtor. If lease rejection were an acceptable option to GMAC, it need not have filed the motion at all. If a Chapter 7 trustee takes no steps to either assume or reject a personal property lease § 365(d)(1) treats it as rejected. I decline the request to order the trustee to assume this lease. The language of § 365(a) clearly assigns the court the responsibility of *reviewing,* not dictating, a trustee's decision to assume or reject. In determining whether and in what regard he should exercise the power to assign or reject an executory contract or lease the primary concern of the trustee must be what is in the best interest of the estate. *Sharon Steel v. National Fuel Gas Distribution Corporation,* 872 F.2d 36, 40 (3rd Cir.1989); *Texaco Inc. v. Louisiana Land and Exploration Co.* 136 B.R. 658, 664 (M.D.La.1992); *In re Upland/Euclid Ltd.,* 56 B.R. 250 (9th Cir.BAP 1985); *In re Chi–Feng Huang,* 23 B.R. 798 (9th Cir.BAP 1982). GMAC has not shown that the estate would benefit in any way if I were to grant the motion.

This court believes that in some cases, assumption of GMAC's lease, as urged, would be a detriment to the estate. If the trustee were to assume the lease, absent a subsequent assignment he would be obligated, pursuant to 11 U.S.C. § 365(b)(1), to cure any defaults under its terms, including bringing any late payments current, to compensate for any actual pecuniary loss arising from any default, and to make all future payments. GMAC has pointed out that under the facts of this case if the trustee were to assume the

---

**2.** There is a split among the circuits as to whether, as to secured consumer debts, the debtor who is current on her payments is limited by the language of § 521(2)(B) to either redeeming or reaffirming the applicable debt or surrendering the collateral. *See In re Taylor,* 3 F.3d 1512 (11th Cir.1993) (yes); *In re Edwards* 901 F.2d 1383 (7th Cir.1990) (yes); *In re Belanger,* 962 F.2d 345 (4th Cir.1992) (no); *Lowry Federal Credit Union v. West,* 882 F.2d 1543 (10th Cir. 1989) (no). This issue has not been decided by the Ninth Circuit. In an unpublished opinion the Oregon bankruptcy court has held that in addressing secured consumer debt a debtor is not limited by the language of § 521(2)(B) to redemption, reaffirmation or surrender of collat-

eral. *Valerie Gay Winters,* # 395–35580–dds7. Section 521(2)(B) applies only to secured debt, not to true leases. This court has not determined whether the GMAC vehicle lease is a true lease or a security document.

**3.** In Oregon the bankruptcy court has held that a contractual provision which designated filing bankruptcy as an act of default is unenforceable and that any action to enforce that provision would violate 11 U.S.C § 362 while the case is open and 11 U.S.C. § 524(a)(2) after the case is closed. *In re Winters,* 69 B.R. 145 (Bankr.D.Or. 1986).

lease, there would be no defaults to cure nor, due to immediate assignment to the debtor, would he have any future payments to make. However, there is a flaw in this argument. GMAC has stated that it is presently filing motions to compel in *all* Chapter 7 cases where the debtor, at filing has an outstanding vehicle lease. This would necessarily include cases where, at filing, the debtor was in default in her lease payments.

Because 11 U.S.C. § 365(d)(1) provides for the treatment, in Chapter 7, of an unexpired lease of the debtor's personal property if the trustee takes no steps to either assume or reject it, the trustee should feel no compulsion to take any further administrative steps regarding such leases. Nothing in the Bankruptcy Code prohibits him from filing a notice of intent to abandon the estate's interest in such leases under § 554(a) if he finds that the conditions of that subsection have been met. This, however, would appear to be an unnecessary act.

At the hearing on the motion this court's question about how GMAC handled its vehicle leases prior to its decision to file motions to compel remained unanswered. It is interesting to note that GMAC initiated its new procedure immediately after Sears was severely sanctioned nationwide by the bankruptcy court for systematically obtaining reaffirmation agreements with debtors which were never filed with or approved by the bankruptcy court. Because of this coincidence and because I have denied its motion, I offer these cautionary comments to GMAC.

Although § 365(g) of the Bankruptcy Code treats the rejection of a lease as a breach, it does not specify that a breach constitutes a termination of the lease. Courts are in disagreement on this issue and the Ninth Circuit Court of Appeals has not addressed it within the context of a personal property lease.

■ "A debtor may enter into an agreement with a creditor to reaffirm an otherwise dischargeable debt. [However t]he agreement will be binding only if made in compliance with [11 U.S.C. § ] 524(c) and (d)." *In re Getzoff,* 180 B.R. 572, 573 (9th Cir. BAP 1995) citing *In re Bowling,* 116 B.R. 659, 663 (Bankr.S.D.Ind.1990). "Section 524(c) ap-

plies to agreements 'between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable ...'" *Id.* at 574. "Section 524 references the consideration given by the debtor, not the lender." *Id.* at 575. Thus, a creditor who enters into a postpetition contract or lease which obligates the debtor under similar terms to those which existed under a prebankruptcy agreement, without observing the reaffirmation rules of 11 U.S.C. § 524(c) and (d), may find itself in violation of the permanent postbankruptcy injunction of § 524(a). Under such circumstances, the creditor will have the burden of proving that the agreement represents a new, postpetition obligation.

A debtor may voluntarily repay any debt. § 524(f). This section, however, should not be read to condone repayment agreements which are in any way the product of the slightest creditor duress.

This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated. An order consistent herewith shall be entered.